[No. 1179.]

# PHILLIPPI MARTIN, RESPONDENT, *v.* VICTOR MILL AND MINING COMPANY, APPELLANT.

ACTION TO RECOVER ALLEGED BALANCE DUE TO A FOREMAN OF A MINING COMPANY—EVIDENCE REVIEWED.—The evidence, in relation to the accounts and business transactions between the foreman and superintendent of a mining company, reviewed: *Held*, insufficient to sustain the judgment.

IDEM—EVIDENCE—PAY-ROLLS—ALTERATIONS.—The pay-rolls of the mining company: *Held*, admissible in evidence for the purpose of showing that the plaintiff and other employes of the mining company were accustomed to receipt for amounts due each month without receiving the money, notwithstanding alterations and interlineations therein.

IDEM—LETTERS OF PRESIDENT—RECEIPTS OF . EMPLOYES:—*Held*, admissible in evidence; the letters as tending to establish an indebtedness; the receipts as tending to prove payments.

IDEM—LOAN OF MONEY—FINDING.—The finding as to loan of money: *Held*, unsustained by the evidence.

IDEM—WAGES OF FOREMAN WHEN ABSENT FROM THE MINE.—A foreman of a mining company is not entitled to wages for the time when he is absent on jury duty or for the time spent in endeavoring to procure a settlement with the company.

IDEM—ACCOUNT STATED—FINDING.—The finding upon "account stated" referred to: *Held*, correct as presented by the record.

APPEAL from the District Court of the Third Judicial District, Esmeralda County.

The letter of Coye, referred to in the opinion as not identifying the loan of two thousand dollars, is as follows:

"VICTOR MILL AND MINING Co.,
"SAN FRANCISCO, Cal.

"*Phillip Martin*—DEAR SIR : If you can give me the names of the men you paid off and that was paid by Rhodes, it will help me much in getting through with the account. You put down two thousand dollars to the Victor Company, cash. I can see that you have paid it out to the men, and the account shows that Rhodes also paid some of them. You, of course, hold the order. It is complicated, as we have credited Mr. Rhodes on the books of the company with all the pay-rolls. Now we will segregate and see what is yours and what is Rhodes' * * *

"H. L. ·COYE."

The findings of fact as to the account stated, as referred to in the opinion, is as follows: "First—That plaintiff as alleged in his complaint performed work and labor and advanced money for defendant, at its special instance and request, during the years 1875, 1876, 1877, and up to May 30, 1878, except that said complaint alleges the same to have been up to May 30, 1877, which error plaintiff corrected by his testimony on the trial. The amount is not stated, but the complaint alleges in subdivision second that for and on account of said work and labor a settlement was had, and a balance struck on the thirtieth day of May, A. D. 1877, according to the evidence, May 30, 1878, when it was found that there was a balance due from defendant to plaintiff therefor of two thousand two hundred and twenty-four dollars. This balance I find to be unpaid according to the evidence. That the said work was performed and money advanced and settlement made is not denied, but it is claimed in defense that it is due, if not paid, from A. J. Rhodes to plaintiff. This is not sustained by the proofs in the case. I find that this settlement was between plaintiffs and defendant, and that the balance found and stated to be due from defendant to plaintiff on that settlement, two thousand two hundred and twenty-four dollars, was for work and labor performed by plaintiff for defendant after it became a corporation (February 11, 1876) and prior to said settlement."

*P. Reddy* and *J. F. Boller*, for Appellant:

I. Evidence and findings reviewed.

II. Rhodes had no authority by virtue of his office of superintendent to borrow money for the company, and could not confer such power on Mintie. (Story on Agency, sec. 69, note 2; Bainbridge on Mines, 379-383; *Union G. M. Co.* v. *R. M. National Bank,* 1 Col. 532; *Union G. M. Co.* v. *R. M. National Bank,* 2 Col. 248; *Breed* v. *First N. B.,* 4 Col. 481.)

III. If the balance due plaintiff was against the defendant, then when plaintiff accepted credit on the private store

books of Rhodes for that amount, and drew against it for supplies and money, and Rhodes giving goods and money for this claim, it operated as an equitable assignment of the claims to Rhodes. (1 Green (N. J.) 247 ; Story's Eq. Jur. sec. 1047 ; *Wiggins* v. *McDonald*, 18 Cal. 126 ; 1 Pars. on Cont. 229 and notes ; 2 Whart. on Cont. secs. 839, 840.)

*D. J. Lewis, Curler & Bowler*, and *Wells & Taylor*, for Respondent :

I. The first finding is fully sustained by the evidence, when considered as a whole. The presumption of law is that, the finding is for the amount due, from the defendant to the plaintiff, for the work done, advances made, etc., from February 11, 1876, to May 3, 1878, when the settlement was made ; for there is no evidence that anything was due from Rhodes to plaintiff when defendant took control of and began to work the mine on its own account. (1 Comp. Laws, 1669 ; *O'Connor* v. *Stark*, 2 Cal. 153 ; *Buckout* v. *Swift*, 27 Cal. 433 ; *Lyons* v. *Leimback*, 29 Cal. 139 ; *Henry* v. *Everts*, 30 Cal. 425 ; *Jenkins* v. *Frink*, 30 Cal. 586 ; *Sears* v. *Dixon*, 33 Cal. 326 ; *San Francisco* v. *Eaton*, 46 Cal. 100 ; *Howard* v. *Throckmorton*, 48 Cal. 482.)

II. The findings and evidence reviewed.

By the Court, BELKNAP, J.:

During the periods mentioned in the complaint the defendant was operating a mine in Esmeralda county. Its general business was intrusted with a superintendent, A. J. Rhodes, who was also the proprietor of a store of general merchandise at Belleville, a point about seven miles from the mine. Plaintiff was foreman at the mine, and also conducted a boarding-house, at which the employes of defendant boarded. He purchased supplies for the boarding-house from Rhodes, and, in his complaint alleges, at various times loaned and advanced moneys to defendant and to its use. The complaint embraces several distinct causes of action arising upon these demands. The nature of the business relations between plaintiff and Rhodes, and the manner in which the

transactions were conducted, may be shown by extracts of plaintiff's testimony taken from the record.    He said :

"During all the time that Mr. Rhodes kept the store at Belleville, namely, up to the last month of the year 1879, he traded with Mr. Rhodes, taking credit for his labor and claims against the company, and drawing goods, wares, and merchandise and money from Mr. Rhodes against said claims."

Again :    "That he procured the signatures of the men, and put his own signature in receipt for labor performed for the months and the years mentioned in said exhibits (the pay-rolls) at the request of Mr. Rhodes, the superintendent, and that Mr. Rhodes agreed to pay them for their time, and to give them credit in his store for anything they wanted up to the amount of the claim each had."

Rhodes testified :

"That Martin traded with him from September, 1875, up to the third day of May, 1878.    I think that Martin drew all his supplies for his boarding-house from witness' (his) store, and was charged on witness' books for all such supplies ; that Martin would turn in his time and claims against the defendant to him, and that he would give Martin credit for it, and that he, witness, would take the company for it. Sometimes Martin would owe him, and sometimes he would owe Martin ;    *    *    *    that from the third day of May, 1878, up to the time he closed his store in Belleville, which was sometime in October, 1879, Martin continued to trade at his store, and afterwards traded for about three months at his store at New Boston ; that Martin would sometimes pay the men the money for their time and bring it to witness and have it credited on the store-books, and that Martin would draw supplies against it ; that the course of dealing was as follows : Martin was permitted to draw whatever he wanted out of his store, either money or goods, which was charged to Martin on his books.    Whenever Martin had any claim against the defendant for his time, or the time that he (Martin) had purchased from the men, that he would take it in payment and credit Martin on the books

with the amount; that the dealing was between him and Martin; and that he (witness) looked to the company to obtain his pay on these claims."

These were the only witnesses who testified upon this subject, and there is no conflict in their testimony. If we are to be governed by it—and we have no alternative—it is manifest that the judgment cannot be sustained, because plaintiff has continued to transfer all his demands against defendant to Rhodes so long as Rhodes continued store-keeping. Rhodes closed his store about the commencement of the year 1880. The testimony shows that since that time plaintiff has paid large sums of money to defendant's use; but the complaint admits credits aggregating ten thousand three hundred and forty-two dollars, and there is nothing to fix the time when they were given. The total credits exceed the advances made since January, 1880, and, *non constat*, that defendant has not paid all of its indebtedness to plaintiff.

Upon the oral argument respondent claimed that an examination of the record would disclose the fact that the judgment given by the district court was for a balance due plaintiff after paying Rhodes, and that the transfer of demands to him was only to the extent of paying plaintiff's indebtedness. In his cross-examination Rhodes testified:

"That at various times while plaintiff was acting as foreman of the defendant, the witness, as superintendent of defendant, requested plaintiff to pay sums of money to men who were working for defendant, and that plaintiff did so; and that it was understood and agreed between witness and plaintiff that all such advances and board-bills of the men working for defendant were to be credited to plaintiff on the books of witness to the extent of what plaintiff might then owe witness."

If this piece of evidence established the fact that the demands against defendant were transferred only to the extent of plaintiff's indebtedness to Rhodes, still there is nothing in the record tending to show a balance in favor of plaintiff. The judgment must be reversed for the reasons stated.

As some of the questions made upon this appeal may arise upon a retrial, it is proper that they should be settled now.

1. The pay-rolls offered in evidence were admissible. The number of days' work and the amount due each man, and set opposite his name, was in frequent instances altered, but the alteration was immaterial to the issue to which the proof was directed. The instruments purported to be receipted monthly pay-rolls of defendant for a portion of the time embraced by the transactions between the parties, and were offered as tending, in connection with other evidence, to prove the fact that plaintiff, as well as others, were accustomed to receipt for the amounts due them each month, and, without receiving the money from defendant, take credit upon the books of Rhodes for the amount. No question of the number of days' labor performed each month, or of the amount due, was involved, but simply the course of business in the respect stated.

2. The letters and receipts offered in evidence by plaintiff were admissible; the former as tending to establish an indebtedness; the latter, in connection with the oral testimony, as tending to prove payments made by plaintiff for defendant. The receipt of A. Mack & Co. must be excepted from this general statement, as there is no proof to connect this payment or matter with defendant.

3. The finding that two thousand dollars was loaned to defendant is unsustained by the evidence. No authority was shown in Thomas Mintie to borrow money for defendant, nor was it shown that defendant received the money. The statement in Coye's letter of July 13, 1881, does not identify this loan, but appears to refer to money paid to the men, and not to Mintie.

4. Plaintiff should not have been allowed his *per diem* for the time he was absent.

5. The finding touching the account stated is correct as the question is presented by the record. The objectionable matter is not itemized; if errors exist they do not affect all of the items of the transaction and invalidate the whole

account.    Whether under the pleadings the account is subject to attack, or whether the facts authorize its correction, are matters upon which we express no opinion, because the questions were not made.

The judgment and order of the district court are reversed, and a new trial ordered.